Leave to file GRANTED

*[signed]* TREVOR N. MCFADDEN
United States District Judge  1/9/23

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MITCHELL WINE
101 NEWNATA CUTOFF
MOUNTAIN VIEW, ARKANSAS 72560           PLAINTIFF

VS.        CIVIL ACTION NO.: 1:21-cv-03349 (TNM)

U.S. DEPARTMENT OF THE INTERIOR
1849 C STREET, N.W.
WASHINGTON, D.C. 20240           DEFENDANT

## PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

Plaintiff, *pro se*, responds this court's December 14, 2022, Order seeking relief from judgment under Fed. R. Civ. Pro. 60 due to mistake and new evidence that was not previously available. Plaintiff does aver:

1. This court's December 14, 2022, Order errantly states that Plaintiff was seeking relief in the form of an adjudication from the U.S. Merit Systems Protection Board (MSPB) regarding Plaintiff's cases DA-0353-22-0105-I-1 and/or I-2 (the Order is not clear in this respect).

2. Plaintiff timely sought a petition for review of his appeal regarding denial of restoration to duty (DA-0353-22-0105-I-1) in this court on January 12, 2022, after MSPB dismissed the case on procedural grounds due to improperly appointed judges and in reprisal against Plaintiff who is an adjudicated federal whistleblower.

3. Plaintiff agrees he attempted to refile the case with MSPB when they refused to automatically refile the case, however MSPB proceeded to re-docket case under DA-0353-22-0105-I-2 with the acknowledgement order clearly stating:

"The Board may not have jurisdiction to decide your appeal at this time. Specifically, you claim you have partially recovered and the agency improperly restored you to duty. A partially recovered employee can appeal only an agency's denial of restoration, or an agency's failure to credit time spent on compensation for purposes of rights and benefits based upon the length of service. *See* 5 C.F.R. § 353.304(c)".

**RECEIVED**
12/21/2022
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

4. In the MSPB judge's initial decision for DA-0353-22-0105-I-2, she errantly states, "Insofar as the appellant contends he was subject to a prohibited personnel practice, the Board has no jurisdiction to address these underlying allegations because he has not raised an otherwise appealable action".

5. Clearly the MSPB judge did not adjudicate the directly appealable action of denial of restoration to duty (*see* 5 C.F.R. 353.304(c)), but rather an improper restoration to duty which is not directly appealable.

6. As a result, this court is mistaken when it falsely claims Plaintiff is seeking anything other than a petition for review of MSPB's outright refusal to adjudicate his appeals to that agency in violation of law.

7. New evidence (Exhibit A) in the form of a recent MSPB appeal of Defendant's denial of Plaintiff's right to restoration to duty following a compensable injury is attached.

8. Plaintiff reached out to Defendant personnel and their counsel, Bradley Silverman, by email on December 11, 2022, regarding restoration to duty regarding an open biologist position in Hot Springs, Arkansas at Defendant's National Park Office and Defendant refused to respond to Plaintiff's emails or his phone calls.

9. Plaintiff filed an appeal of the denial of restoration to duty with the MSPB on December 14, 2022:

An electronic e-appeal in the matter of Mitch Wine v. Department of the Interior has been submitted to U.S. Merit Systems Protection Board.
Dallas Regional Office
1100 Commerce Street
Room 620
Dallas, TX 75242
Phone: (214) 767-0555
Confirmation Number: 217421
Appeal Number: 202205672

10. As detailed in the appeal (Exhibit A), the MSPB has multiple conflicts of interest regarding MSPB Board members Tristan Leavitt and Ray Limon.

11. The MSPB was unwilling or unable to docket the aforementioned appeal due to conflicts of interest and communications with that agency revealed they did not deny the allegations within the appeal.

12. Plaintiff contacted Defendant counsel, Bradley Silverman, by email on December 20, 2022, and inquired if Defendant denied any of the allegations in the attached appeal, and counsel has not responded.

13. Plaintiff makes clear to this court that the relief he seeks in this matter is a petition for review of MSPB's decision to deny his restoration to duty appeal(s) based on errant claims of procedural dismissal and/or lack of jurisdiction.

14. It was a mistake by MSPB and this court to claim Plaintiff's right to restoration to duty following a compensable injury is not directly appealable to the MSPB.

15. This court is also mistaken when it refuses to adjudicate a timely filed petition for review, as is the case in the instant proceeding.

16. The aforementioned being true and correct, Plaintiff seeks relief from this court's Order as described herein and demands a jury trial to adjudicate the attached appeal and previous appeals regarding denial of restoration to duty.

Respectfully submitted,

*Mitchell Wine*

Mitchell Wine
101 Newnata Cutoff
Mountain View, Arkansas 72560
501-350-7663
mitchwine@hotmail.com

## CERTIFICATE OF SERVICE

This filing was transmitted to the court via email on December 21, 2022, at: dcdml_intake@dcd.uscourts.gov. It will be automatically transmitted to appropriate Defendant attorneys of record when uploaded to the court's electronic filing system.

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

MITCHELL WINE                                                                APPELLANT

VS.                      Case Number:

U.S. DEPARTMENT OF THE INTERIOR                                  AGENCY

**APPELLANT'S MIXED CASE COMPLAINT OF DENIAL OF RESTORATION TO DUTY, AGENCY PROHIBITED PERSONNEL ACTIONS, VIOLATIONS OF SECTION 501 OF THE REHABILITATION ACT AND WHISTLEBLOWER PROTECTION ACT, AND REQUEST FOR IMMEDIATE STAY OF DIRECTLY APPEALABLE PERSONNEL ACTION**

Appellant Mitchell Wine, *pro se*, for his appeal of the above captioned Agency violations of law avers as follows:

1.      This is a mixed case complaint under 5 U.S.C. 7702 and 29 CFR § 1614.302.

2.      Appellant is a former full time, permanent employee of the Agency from 2003 until 2018 and is a 10-point preference-eligible disabled veteran.

3.      Appellant was medically retired from his GS-12 position by unlawful settlement agreement in 2018 but the settlement agreement did not preclude restoration of Appellant after partial recovery from a compensable injury.

4.      The Agency is currently seeking to fill a permanent position in the Hot Springs National Park Office in Arkansas at the GS-11 level and Appellant has reached out to the Agency by email on December 11, 2021, to Agency personnel Monica Cordova and Christin Warmerdam along with Agency legal counsel Bradley Silverman so they could ensure the request was forwarded to appropriate personnel.

Exhibit A

5.  The Agency is refusing to respond and allow Appellant to seek restoration to duty and this action is directly appealable to MSPB.

6.  The Agency has no other reason, other than Appellant's status as a disabled person and adjudicated whistleblower, to refuse his right to seek restoration following partial recovery from a compensable injury.

7.  This appeal is timely, and the Merit Systems Protection Board (MSPB) has jurisdiction in accordance with 5 C.F.R. 353.304, 5 U.SC. 7702, 5 U.S.C. 7701, 29 CFR § 1614.302, section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), the Privacy Act, the Appointments Clause, 18 U.S.C. 241 and 242, 5 U.S.C. 2302(b)(1), (b)(8), (b)(9), and (b)(14).

8.  The Agency has copies of Appellant's medical records and accessed those records to force Appellant into an unlawful settlement agreement in April 2018 to effectuate his removal from duty for an aggravated work-related compensable injury in violation of 5 U.S.C. 2302(b)(14).

9.  Appellant sought administrative leave as a reasonable accommodation based on the advice of the Agency-approved medical professional who treated Appellant for his compensable injuries and this leave was denied by the Agency.

10. Agency supervisor Chris Davidson had additional Appellant worker's compensation claims unlawfully denied by providing false information to the Department of Labor, specifically claiming there was "no whistleblower situation" in the Arkansas Field Office related to Appellant during 2015-2016.

11. The Agency continues to access Appellant's medical records to deny his restoration to duty as a disabled person and adjudicated whistleblower in violation of 5 U.S.C. 2302(b)(1), (b)(8), (b)(9), and (b)(14), *inter alia*.

12. The Agency is also refusing to restore Appellant to duty in violation of the Whistleblower Protection Enhancement Act of 2012 and the Dr. Chris Kirkpatrick Whistleblower Protection Act of 2017.

13. Appellant is an adjudicated whistleblower as described in MSPB cases DA-1221-16-0513-W-1 and W-2, this is not in dispute and Appellant is currently making whistleblower disclosures to the federal courts regarding information at issue in this case.

14. Appellant demands an immediate stay of the Agency's action to deny his restoration to duty following partial recovery from a compensable injury and Appellant's compensable injury is on file with the Department of Labor under claim number TC0010328.

15. The Agency has directly argued in discovery responses from earlier MSPB cases that Appellant's injuries are a direct result of his compensable military injury on file with the Department of Labor.

16. The stay would pose no hardship to the Agency as they are already seeking a GS-11 biologist in the Hot Springs National Park office and Appellant was most recently employed by the Agency via telework from his home.

17. For the aforementioned reasons, Appellant demands a hearing in this matter and an immediate stay of the Agency decision to block his restoration to duty.

18. Appellant seeks all other relief available from this tribunal to be determined in an addendum hearing.

19. Appellant possesses a letter from the Office of Special Counsel (OSC) indicating they have recused themselves from investigating any whistleblower complaints pertaining to Appellant, therefore he is exhausted before OSC and is not required by law to make any further proof to this court.

20. Upon information and belief, the OSC recused themselves from Appellant's complaints due to misconduct by now MSPB Board member Tristan Leavitt who unlawfully prevented Appellant from refiling his previous complaints to that Agency regarding a whistleblower reprisal grievance Appellant filed against his supervisor (who was a target of the complaint) who summarily dismissed the complaint while falsely claiming to be a "servicing human resources officer".

21. Appellant also avers the Agency is in violation of the Privacy Act because they continue to withhold more than 55+ pages (Exhibit A) of information regarding an unlawful home invasion under color of law at Appellant's private residence.

22. Appellant further avers that MSPB board members Tristan Leavitt and Ray Limon are implicated in felony deprivation of rights under 18 U.S.C. 241 and 242 within the unlawfully redacted/withheld documents.

23.     Plaintiff also raises the most serious complaint herein regarding departed whistleblowers Kelly Bibb and Trevor McCardle, who upon information and belief committed suicide as a direct result of Tristan Leavitt's misconduct at both OSC and MSPB.

24.     Ms. Kelly Bibb was an adjudicated Agency whistleblower who died by suicide after her supervisors accessed her medical records and reprised against her, and Tristan Leavitt refused to allow Appellant to raise this claim to OSC.

25.     In the case of Mr. McCardle (MSPB case SF-0752-16-0689-I-3), the MSPB under Tristan Leavitt and Ray Limon's direction either purposely, negligently, or incompetently claim that McCardle's directly appealable removal from duty was jurisdictional under 5 U.S.C. 1221 rather than 5 U.S.C. 7701/7702 where true jurisdiction lay for a directly appealable action.

26.     Leavitt and Limon are incompetent and bent on whistleblower reprisal to the point they appear unable or unwilling to interpret statutory law correctly in their zeal to reprise against whistleblowers to the point they take their own lives.

27.     Under 5 U.S.C. 7701/7702, Mr. McCardle was legally allowed to raise his removal (directly appealable personnel action) to MSPB, and 5 U.S.C. 7701(c)(2)(B) clearly states an Agency action "…may not be sustained…" if it is based on any prohibited personnel action listed in 5 U.S.C. 2302(b) to include whistleblower reprisal under (b)(8) and (b)(9).

28.     Appellant reiterates removal from duty for any federal employee is a "full stop" under statutory law if an adjudicated whistleblower demonstrates, as Mr.

McCardle did, that his removal met the "knowledge and timing" test regarding legitimate disclosures of waste, fraud, and abuse and that his disclosures were a factor in his removal from duty.

29. Appellant avers that Mr. McCardle (and Ms. Bibb) would be alive today but for the absolute gutting of whistleblower protections by Tristan Leavitt and Ray Limon as described herein.

30. The MSPB judge responsible for the unlawful initial decision errantly applied 5 U.S.C. 1221(e)(2) to Mr. McCardle's case and allowed the agency in that case to use "…clear and convincing evidence…" they would have taken the removal action despite McCardle's status as a whistleblower, when such evidence is only allowed in individual rights of action cases for proposed actions that are minor by comparison and otherwise not directly appealable to the MSPB unlike the directly appealable removal from duty of which Mr. McCardle complained.

31. Upon information and belief, Mr. McCardle died as a direct result of a stunningly ignorant decision by an MSPB judge directly appointed by Leavitt and Limon, and then Leavitt and Limon upheld the egregiously unlawful decision as board members of MSPB despite admitting in the decision that McCardle was indeed an adjudicated whistleblower, and his disclosures were both protected and a factor in his removal from duty.

32. This deprivation of rights under color of law also precluded an official investigation by the agency head into Mr. McCardle's death (and Ms. Bibb's death

in her case) in that matter that is mandatory under the Dr. Chris Kirkpatrick Whistleblower Protection Act of 2017 anytime a whistleblower dies by suicide.

33. Further, Leavitt and Limon lied under oath to congress when they both claimed they had no past incidents that would present a conflict of interest in their duties as MSPB board members despite both knowing they were implicated in felony deprivation of Appellant's rights within the 55+ documents being withheld in violation of the Privacy Act in this matter which requires them both to recuse from Appellant's MSPB appeals.

34. There is no contrary argument to that presented by Appellant herein which brings up the fact that none of the current MSPB administrative judges appointed/ratified by Leavitt and Limon on March 4, 2022, are correctly appointed under the Appointments Clause.

35. The Appointments Clause requires that congress specifically decide if the President of the United States retains the power to appoint such judges directly or whether such authority would reside with an individual or multiple individuals at MSPB, and without a doubt congress has not made such a decision.

36. Leavitt was appointed to MSPB counsel in his previous role as MSPB general counsel and executive director by Mark Robbins just before Robbins vacated the MSPB full board as the last remaining member, leaving Leavitt with no supervisor in which to answer.

37. Leavitt used his unchecked power to begin misconstruing statutory law as general counsel of MSPB as described herein to effectuate the suicide of

whistleblowers or to inflict maximum emotional and financial damage that is known to lead to whistleblower suicides.

38. The aforementioned reason alone is enough to advise congress that appointment of MSPB administrative judges should rest in the hands of either the executive director or the Clerk of the Board (the latter of which MSPB cannot function without), or else the board could face a crisis similar to that as of late which left the board without any members for years and therefore they would have been unable to hire/appoint new judges.

39. Clearly board members Leavitt and Limon (and judges appointed by them) are guilty of deprivation of rights under color of law in purposely misconstruing statutory law as described herein.

40. Any judge assigned to this case who was appointed/ratified by those two men who wishes to bring such a flawed argument regarding application of 5 U.S.C. 1221 thresholds to cases filed under 5 U.S.C. 7701/7702, such as the instant case, should immediately recuse due to both incompetence and blatant conflicts of interest along with the fact they are not lawfully appointed follwoing congressional direction as required by the Appointments Clause.

41. Appellant is specifically seeking adjudication of his right to restoration to duty and an adjudication of his claims described herein on the merits of each claim after discovery and a hearing in this matter and any failure to adjudicate such claims represents an ongoing controversy.

42.     Unless MSPB can prove Leavitt and Limon are not implicated in felony deprivation of rights under color of law within unlawfully withheld documents listed in Exhibit A of this filing and/or that congress vested appointment powers in a board quorum, they should recuse the entire board and allow Plaintiff to seek redress in federal district court.

43.     Appellant also demands an immediate stay of the Agency's action to deny his restoration to duty as prayed for herein.

                                        Respectfully submitted,

                                        *Mitchell Wine*

                                        Mitchell Wine
                                        101 Newnata Cutoff
                                        Mountain View, Arkansas 72560
                                        501-350-7663
                                        mitchwine@hotmail.com

**CERTIFICATE OF SERVICE**

This filing was transmitted to the MSPB via their online electronic submission portal known as e-Appeal on December 14, 2022. It will be automatically transmitted to appropriate Agency attorneys of record when uploaded to e-Appeal.



# United States Department of the Interior

FISH AND WILDLIFE SERVICE
1875 Century Boulevard
Atlanta, Georgia 30345

NOV 2 6 2018

In Reply Refer To:
FWS/R4/ES/2018-01084

Mitch Wine
101 Newnata Cutoff
Mountain View, Arkansas 72560

Dear Mr. Wine:

This completes our response to your Freedom of Information Act (FOIA), 5 U.S.C. § 552, request dated July 30, 2018. In your request, you asked for:

- *"Copies of public records related to a December 14, 2017 search and seizure at my property (101 Newnata Cutoff, Mountain View, Arkansas) commissioned by managers (Chris Davidson and Melvin Tobin) at the U.S. Fish and Wildlife Service Office in Conway, Arkansas. I would like a copy of all correspondence (to include but not limited to emails, phone records, text messages, phone call notes, video or audio recordings, letters, memoranda, reports, etc.) related to the incident. Please be sure to include all responsive intra- and inter-agency correspondence before, during, and after the forced entry onto the property."*

We have searched our records and have located twenty-nine (29) documents that are responsive to your request. After consulting with the Office of the Regional Solicitor, we have determined that some information in the documents contains material that is exempt from disclosure under Exemptions 5, 6, and 7(C) of the FOIA. We are releasing eight (8) documents in their entirety (11 pages); we are releasing eight (8) documents in part (23 pages); we have withheld eleven (11) documents in full (36 pages); and two (2) documents are duplicates. Portions of three (3) documents have been referred to the Department of Homeland Security for processing.

## Exemption 5

Exemption 5 of the FOIA allows an agency to withhold "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the Agency." 5 U.S.C. § 552(b)(5). Exemption 5 therefore incorporates the privileges that protect materials from discovery in litigation, including the deliberative process, attorney work-product, attorney-client, and commercial information privileges.

Exhibit A

## Deliberative Process Privilege

The deliberative process privilege protects the decision-making process of government agencies and encourages the frank exchange of ideas on legal or policy matters by ensuring agencies are not forced to operate in a fish bowl. A number of policy purposes have been attributed to the deliberative process privilege. Among the most important are to: (1) assure that subordinates will feel free to provide the decision maker with their uninhibited opinions and recommendations; (2) protect against premature disclosure of proposed policies; and (3) protect against confusing the issues and misleading the public.

The deliberative process privilege protects materials that are both pre-decisional and deliberative. The privilege covers records that reflect the "give-and-take of the consultative process" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."

The materials that have been withheld under the deliberative process privilege of Exemption 5 are both pre-decisional and deliberative. They do not contain or represent formal or informal agency policies or decisions. They are the result of frank and open discussions among employees of the Department of the Interior (Department). Their contents have been held confidential by all parties, and public dissemination of this information would have a chilling effect on the agency's deliberative processes.

The deliberative process privilege does not apply to records created 25 years or more before the date on which the records were requested.

## Attorney-Client Privilege

The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice and is not limited to the context of litigation. Moreover, although it fundamentally applies to confidential facts divulged by a client to his or her attorney, this privilege also encompasses any opinions given by an attorney to his or her client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect confidential client-supplied information.

The information that has been withheld under the attorney-client privilege of Exemption 5 constitutes confidential communications between agency attorneys and agency clients, related to legal matters for which the client sought professional legal assistance and services. It also encompasses opinions given by attorneys to clients based on client-supplied facts. Additionally, the U.S. Fish and Wildlife Service (Service) employees who communicated with the attorneys regarding this information were clients of the attorneys at the time the information was generated and the attorneys were acting in their capacities as lawyers at the time they communicated legal advice. Finally, the Service has held this information confidential and has not waived the attorney-client privilege.

Mr. Wine                                                                                                  3

### Exemption 6

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We are withholding some information in part under Exemption 6.

The phrase "similar files" covers any agency records containing information about a particular individual that can be identified as applying to that individual. To determine whether releasing records containing information about a particular individual would constitute a clearly unwarranted invasion of personal privacy, we are required to balance the privacy interest that would be affected by disclosure against any public interest in the information.

Under the FOIA, the only relevant public interest to consider under the exemption is the extent to which the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens 'know what their government is up to'. The burden is on the requester to establish that disclosure would serve the public interest. When the privacy interest at stake and the public interest in disclosure have been determined, the two competing interests must be weighed against one another to determine which is the greater result of disclosure: the harm to personal privacy or the benefit to the public. The purposes for which the request for information is made do not impact this balancing test, as a release of information requested under the FOIA constitutes a release to the general public.

The information that has been withheld under Exemption 6 consists of personal information, and we have determined that the individuals to whom this information pertains have a substantial privacy interest in withholding it. Additionally, you have not provided information that explains a relevant public interest under the FOIA in the disclosure of this personal information and, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties. Because the harm to personal privacy is greater than whatever public interest may be served by disclosure, release of the information would constitute a clearly unwarranted invasion of the privacy of these individuals and we are withholding it under Exemption 6.

### Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" if the records fall within one or more of six specific bases for withholding set forth in in subparts (a) through (f). 5 U.S.C. § 552(b)(7)(a)-(f). We are withholding some information in part under Exemption 7 because this information is protected under the following:

### 7(C)

Exemption 7(C) protects law enforcement records if their release could reasonably be expected to constitute an unwarranted invasion of personal privacy. It is regularly applied to withhold references to individuals in law enforcement files. For the materials that have been withheld under 7(C), we have determined that releasing them would constitute an unwarranted invasion of

Mr. Wine                                                                                           4

privacy because they identify individuals referenced in law enforcement records and the release of this information would not shed light on an agency's performance of its statutory duties.

We reasonably foresee that disclosure would harm an interest protected by one or more of the nine exemptions to the FOIA's general rule of disclosure.

In addition to me, the official responsible for this partial denial is:

> Brigette J. Beaton
> Attorney-Advisor
> Office of the Regional Solicitor
> U.S. Department of the Interior
> 75 Ted Turner Drive, S.W., Suite 304
> Atlanta, GA 30303

You may appeal this partial denial under 43 C.F.R. § 2.57 by writing to:

> Freedom of Information Act Appeals Officer
> Department of the Interior
> Office of the Solicitor
> 1849 C Street, NW, Mail Stop 6556
> Washington, D.C. 20240
> Email: FOIA.Appeals@sol.doi.gov

The FOIA Appeals Officer must receive your FOIA appeal no later than 90 workdays from the date of this final letter responding to your FOIA request. Appeals arriving or delivered after 5:00 p.m. E.T., Monday through Friday, will be deemed received on the next workday. You must include with your appeal copies of all correspondence between you and the Service concerning your FOIA request, including a copy of your original FOIA request and this denial letter. Failure to include this documentation with your appeal will result in the Department's rejection of your appeal. The appeal should be marked, both on the envelope and the face of the letter, with the legend, "FREEDOM OF INFORMATION APPEAL." Your letter should include in as much detail as possible any reason(s) why you believe the Service's response is in error.

Also, as part of the 2007 OPEN Government Act FOIA amendments, the Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and federal agencies as a nonexclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation.

You may contact OGIS via regular mail at:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road - OGIS
> College Park, MD 20740-6001

Mr. Wine                                                                                                         5

You may also contact OGIS in the following ways:

| | |
|---|---|
| E-mail: | ogis@nara.gov |
| Web: | https://ogis.archives.gov |
| Phone: | (202) 741-5770 |
| Fax: | (202) 741-5769 |
| Toll-free: | 1-877-684-6448 |

You also may seek dispute resolution services from our FOIA Public Liaison, Carrie Hyde-Michaels, Chief, Branch of FOIA, Records, and Privacy, at (703) 358-2291.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions, please contact Melvin Tobin, Arkansas Field Supervisor, at (501) 513-4473 or melvin_tobin@fws.gov. Thank you for contacting the U.S. Fish and Wildlife Service.

                                                                 Sincerely yours,

                                                                 *[signature]*
                                                                 Tiffany McClurkin
                                                                 Region 4 FOIA Coordinator